**O**

# United States District Court
# Central District of California

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                    Plaintiff,<br><br>        v.<br><br>GORDON A. DRIVER; AXCESS AUTOMATION, LLC,<br><br>                    Defendants. | Case № 2:09-cv-03410-ODW(RZx)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO SET DISGORGEMENT AND CIVIL PENALTIES [57]** |

## I.    INTRODUCTION

This enforcement action brought by Plaintiff Securities and Exchange Commission ("SEC") concerns a Ponzi scheme run by Defendants Axcess Automation, LLC and Gordon Driver—the manager of Axcess.  Before the Court is the SEC's Motion to Set Disgorgement and Civil Penalties against Driver.  (ECF No. 57.)  Driver opposes the SEC's proposed amounts of disgorgement and civil penalties.  (ECF No. 67.)  For the reasons discussed below, the Court **GRANTS** the SEC's Motion, but reduces the amounts of disgorgement and civil penalties proposed by the SEC.[1]  (ECF No. 57.)

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.

## II.   FACTUAL BACKGROUND

The SEC initiated this enforcement action against Driver for numerous violations of both the Securities Exchange Act of 1934 and the Securities Act of 1933. (ECF No. 1.)  The SEC alleges that Driver told investors that he had developed a software program for trading futures.  (*Id.*)  According to the SEC, from February 2006 until the filing of the Complaint in 2009, Driver raised at least $13.7 million from more than 100 investors in the United States and Canada by selling securities in the form of interests in Axcess.  (*Id.*)  While Driver told these investors that he was pooling their money to trade futures, using the software he developed, the SEC alleges that Driver in fact did very little trading.  (*Id.*)

In addition to this enforcement action, two other government-agency actions were filed against Driver based on the same fraudulent conduct.  The U.S. Commodity Futures Trading Commission ("CFTC") filed suit against Driver, Axcess, and another related entity for violations of the Commodity Exchange Act and CFTC regulations. *See CFTC v. Driver*, No. 8:09-cv-0578-ODW(RZx) (the "CFTC Action").  In 2012, this Court granted an unopposed motion for summary judgment in the CFTC Action and ordered Driver and the other defendants to pay restitution in the amount of $9,562,488, plus post-judgment interest.  *Id.* at ECF No. 127.  Driver and the other defendants in the CFTC Action were also ordered to pay a civil penalty, jointly and severally, in the amount of $31,800,000, plus post-judgment interest.  *Id.*

The Ontario Securities Commission ("OSC") in Canada also brought suit against Driver and his companies (the "OSC Action").  (*See* ECF No. 69, Dean Decl. ¶¶ 6–7, Exs. 2–3.)  In 2012, Driver and his related companies were found liable for fraud in the OSC Action and ordered to disgorge $4,902,330.60.  (*Id.*)

On December 14, 2009, a consent judgment was entered against Driver in this enforcement action brought by the SEC.  (ECF No. 33.)  Under the judgment's terms, Driver is permanently enjoined from further violations of federal securities laws and may not contest the underlying facts alleged in the SEC's Compalint.  (*Id.*)  Driver

was also ordered to pay disgorgement, prejudgment interest, and civil penalties in amounts to be determined by the Court.  Calculation of the amounts is the final issue remaining in this action and it is now before the Court for decision.

## III.  DISCUSSION

The SEC seeks $13,710,147 in ill-gotten gains, prejudgment interest based on that amount, and an additional $13,710,147 in civil penalties.  Driver disputes the SEC's calculations.

## A.  Disgorgement

"[A] district court has broad equity powers to order the disgorgement of ill-gotten gains obtained through violation of the securities laws.  Disgorgement is designed to deprive a wrongdoer of unjust enrichment, and to deter others from violating securities laws by making violations unprofitable."  *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1096 (9th Cir. 2010) (quoting *SEC v. First Pac. Bancorp.*, 142 F.3d 1186, 1191 (9th Cir. 1998)).  The amount of disgorgement should include all gains flowing from the illegal activities.  *Id.* at 1096–97.  As opposed to damages, which are designed to compensate fraud victims, disgorgement is equitable in nature and aimed at the defendant's improper profits.  *See SEC v. Rind*, 991 F.2d 1486, 1493 (9th Cir. 1993).

Here, the SEC seeks $13,710,147 in ill-gotten gains from Driver's Ponzi scheme.  The SEC reaches this amount by relying on the Declaration of Ramy Kassabgui—an Internet Surveillance Specialist with the SEC's Office of Enforcement. (ECF No. 5.)  Kassabgui states that from February 1, 2006, through March 31, 2009, Driver raised $13,710,147 from defrauded investors.  (*Id.* ¶¶ 15–20.)  But Driver opposes the SEC's proposed amount of disgorgement, arguing that it should be reduced by $10.7 million.  (Opp'n 4:6–9:24.)  According to Driver, a reduction is necessary because $10.7 million was returned to investors as indicated in the Kassabgui Declaration that the SEC relies on.  (ECF No. 5 ¶ 20(b).)

/ / /

1    The SEC argues that the Court is not prohibited from setting disgorgement

2  based on Driver's gross profits as opposed to net profits.  (*See* Reply 4–6.)  But, as the

3  SEC acknowledges, the decision to set disgorgement based on gross or net profits is

4  soundly within the Court's discretion.  *See SEC v. JT Wallenbrock & Assocs.*, 440

5  F.3d 1109, 1112–17 (9th Cir. 2006) (affirming the district court's disgorgement order

6  where the court deducted the amount returned to investors but acknowledging that the

7  defendants' gross profits constituted their ill-gotten gain).  The Court finds that Driver

8  should be ordered to disgorge $3,010,147.[2]  This includes the $10.7 million reduction

9  requested by Driver.  *See SEC v. Loomis*, 17 F. Supp. 3d 1026, 1032 (E.D. Cal. Apr.

10  24, 2014) (finding that the amounts returned to investors cannot be characterized as

11  defendant's profits).

12  **B.    Prejudgment Interest**

13    The parties do not dispute that Driver is liable for prejudgment interest.

14  According to the consent judgment, prejudgment interest is to be calculated based on

15  the treasury-bill rate provided in 28 U.S.C. § 1961.  (ECF No. 33.)  Since the Court

16  has reduced the disgorgement amount, the SEC will need to recalculate prejudgment

17  interest based on the new disgorgement amount of $3,010,147.

18  **C.    Civil Penalties**

19    The SEC seeks a civil penalty equal to the amount of disgorgement as

20  authorized under 15 U.S.C. §§ 77t(d)(1), 78u(d)(3).  On the other hand, Driver argues

21  that the assessment of a civil penalty is unwarranted in this case and that the SEC's

22  proposed penalty is excessive.

23    The Court finds a civil penalty is appropriate in this action.  Driver consented to

24  the assessment of a civil penalty in the December 14, 2009 judgment.  (*See* ECF

25  No. 33.)  Moreover, the factors courts weigh in determining whether to impose a civil

26  penalty favor a civil penalty in this action.  *See SEC v. Murphy*, 626 F.2d (9th

27
28
---
[2] Driver raised an additional argument for further reduction of the disgorgement amount based on assets frozen at the outset of this litigation.  The Court finds the argument unsupported by the evidence.  (*See* ECF No. 69, Dean Decl. ¶ 8.)

Cir. 1980).  The Court recognizes that Driver consented to judgment in this action and that multiple judgments have been entered against him for the same conduct in the U.S. and Canada.  But Driver's conduct involved a high degree of scienter.  He defrauded more than 100 investors out of millions of dollars.  Driver also continues to contest his guilt in the fraud, having appealed the judgment in the CFTC Action.

Assessment of a civil penalty is within the Court's discretion, and the Court finds that a civil penalty equal to the amount of disgorgement is appropriate.  *See, e.g.*, *SEC v. CMKM Diamonds, Inc.*, 635 F. Supp. 2d 1185, 1193 (D. Nev. 2009) (assessing a civil penalty equal to the amount of defendant's pecuniary gain).  The Court assesses a civil penalty against Driver in the amount of $3,010,147.

## IV.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** the SEC's Motion to Set Disgorgement and Civil Penalties.  (ECF No. 57.)  The Court sets **disgorgement at $3,010,147**, plus **prejudgment interest** to be calculated by the SEC in accordance with the consent judgment entered on December 14, 2009.  The Court also assesses a **civil penalty in the amount of $3,010,147**.  The SEC shall file a proposed final judgment in accordance with this Order **no later than 14 days** from the date of this Order.

**IT IS SO ORDERED.**

December 4, 2014

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**